IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION


**DUSTY CULP**,

               Plaintiff,                                Case No. CV10-679-SU

     v.

                                                 **OPINION AND ORDER**

**DERRICK E. MCGAVIC, P.C.**

        Defendant.


Joshua Trigsted
Trigsted Law Group
5200 S.W. Meadows Rd., Suite 150
Lake Oswego, Oregon 97035
        Attorney for plaintiff

Bruno J. Jagelski
Yturri Rose
P.O. Box "S"
Ontario, Oregon 97914
        Attorney for defendant

SULLIVAN, Magistrate Judge:


Page 1 – OPINION AND ORDER

This is an action under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* The matter before the court is defendant's motion for partial summary judgment on each of plaintiff's claims: 1) that McGavic failed to send a copy of the garnishment pursuant to Or. Rev. Stat. § 18.658; 2) that McGavic violated 15 U.S.C. § 1692e; 3) that McGavic has a bona fide error defense to the claim under Or. Rev. Stat. § 18.658; and 4) that McGavic has a bona fide error defense to plaintiff's allegation of misrepresentation. The parties have consented to the Magistrate Judge's jurisdiction to conduct all proceedings in this case pursuant to 28 U.S.C.A. § 636 and FRCP 73.

Following oral argument, the parties were permitted to conduct additional discovery and submit supplemental briefs. Defendant moved to strike plaintiff's supplemental brief for failing to follow the court order requiring simultaneous filing of supplemental briefing. Plaintiff, in turn, moved to strike defendant's motion to strike arguing that defendant's submission of additional argument regarding the partial summary judgment motion is inappropriate. The motions to strike add nothing to the substantive arguments in the case. The motions to strike are not well taken and are denied.

## FACTUAL BACKGROUND

On December 24, 2009, defendant Derrick McGavic obtained a Writ of Garnishment ("the Writ") from the Oregon Circuit Court for Harney County, against plaintiff Dusty Culp's bank account, to satisfy a claim for $2,876.12 by Capital One Bank. Affidavit of Bruno Jagelski Ex. 1. Oregon law requires:

> Following delivery of a writ of garnishment to a garnishee, the person who delivered the writ must mail or deliver promptly the following documents to the debtor whose property is being garnished by the writ:

        a)     A copy of the writ of garnishment;

        b)     The original of the debt calculation form;

        c)     A notice of exemptions form in substantially the form provided by Or. Rev. Stat. § 18.845; and

        d)     A challenge to garnishment form in substantially the form provided by Or. Rev. Stat. § 18.850, with the names and addresses of the garnishor and garnishee entered by the garnishor.

Or. Rev. Stat. § 18.658(1)(a)-(d). The statutory requirements may be met by mailing the documents to the address for the debtor that appears in the Writ; if an address for the debtor does not appear in the Writ, the person serving the Writ "need not comply" with the notice requirements. Or. Rev. Stat. § 18.658(2).

Culp alleges in the complaint that, despite the appearance of her correct address on the Writ, she never received any of the documents required by Or. Rev. Stat. § 18.658. Amended Compl. ¶¶ 11, 12, Jagelski Aff. Ex. 3. She asserts that McGavic's failure to comply constituted an unfair and deceptive practice in violation of the FDCPA. *Id.* at ¶ 13.

McGavic obtained an ex parte judgment against Culp on March 23, 2009, in the amount of $2,475.82. *Id.* at ¶ 14, Ex. B. Culp alleges that "after Plaintiff had received notice through the garnishee of the attempted December garnishment," on her request, McGavic sent her a letter dated January 27, 2010 ("the January 27 letter"), outlining a proposed payment arrangement for the judgment. *Id.* at Ex. C. The January 27 letter showed the amount outstanding as $2,285.28, "indicating that Defendant had received some payment toward the judgment in the time between the entry of the judgment in March 2009, and January 2010," but under the heading "Payments Received," the January 27 letter showed $0. *Id.* at ¶¶ 16, 17. Culp asserts that the January 27 letter

"misrepresented the balance remaining on the judgment and/or the amount of payments received

Page 3 – OPINION AND ORDER

toward the judgment," and that this constituted a violation of the FDCPA. *Id.* at ¶ 19.

## LEGAL STANDARD

A party is entitled to summary judgment if the "movant shows that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324. Assuming that there has been sufficient time for discovery, summary judgment should be entered against a "party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

On a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and must draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.,* 251 F.3d 1252, 1257 (9th Cir. 2001). The court may not make credibility determinations or weigh the evidence. *Lytle v. Household Mfg., Inc.,* 494 U.S. 545, 554-55 (1990). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150 (2000). A genuine dispute arises "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *State of California v. Campbell*, 319 F.3d 1161, 1166 (9th Cir. 2003).

## DISCUSSION

Page 4 – OPINION AND ORDER

The FDCPA prohibits false, deceptive, misleading, unfair or harassing collection practices, 15 U.S.C. § 1692e.  Among the misrepresentations explicitly prohibited by the FDCPA are the false representation of the character, amount or legal status of any debt, 15 U.S.C. § 1692e(2)(A).  The court determines whether a communication violates the FDCPA by inquiring whether it is "likely to deceive or mislead a hypothetical 'least sophisticated debtor.'"  *Wade v. Regional Credit Ass'n,* 87 F.3d 1098, 1100 (9th Cir. 1996).  The FDCPA regulates the conduct of "any person" in "any business" 1) whose principal purpose is debt collection, or 2) who regularly collects or attempts to collect debts, directly or indirectly. 15 U.S.C. § 1692a(6).

A.    Failure to Receive Notice of Garnishment

Culp asserts an FDCPA misrepresentation claim based on her failure to receive the documents mandated by Or. Rev. Stat. § 18.658.  McGavic moves for summary judgment against the claim on the ground that there is no genuine issue of material fact that McGavic, in the ordinary course of business, sent all of the required documents to Culp at the address shown on the Writ. Defendant cites the "mailbox" rule and the presumption that proper and timely mailing of a document raises a rebuttable presumption that the document was received by the addressee.  *Mahon v. Credit Bureau of Placer County, Inc.,* 171 F.3d 1197, 1201 (9th Cir. 1999).

In *Mahon,* the court held that a debt collector need not establish actual receipt by the debtor of a  "validation of debt" notice sent pursuant to the FDCPA, 15 U.S.C. § 1692g(a).  The court held further that the debtors had not raised a genuine issue of material fact to dispute the fact that the debt collector's standard business practice established that the notice was sent to the debtors' home via first class mail, or that the debt collector failed to follow its ordinary business practice.

McGavic submitted the Affidavit of Rene L. Wheeler, Legal Word Processing Manager for

the Garnishment Department at McGavic & Finney, P.C.,   Wheeler states that the Writ was issued

to Culp's bank, on December 24, 2009, and that the Garnishment Department used the computer

software program "Cogent" to process garnishments issued by that office.   Wheeler Aff. ¶ 2.   The

Cogent software automatically merged the bank garnishment file with the software's templates and

compiled the garnishment packages to be issued by the Garnishment Department.   *Id.* at ¶ 3.   The

garnishment packages created by this means included copies of the garnishment for the bank and

for the debtor.   *Id.*

The debtor's copy of the garnishment package included a cover letter to the debtor, an

FDCPA notice, an original debt calculation sheet, a copy of the Writ, and a challenge to garnishment

form.   *Id.* at ¶ 4.   The Cogent system recorded and saved the date the garnishment materials were

produced and served, as well as any changes made to any garnishment account.   *Id.* at ¶ 5.   Once the

garnishment packages were printed, they were separated and given to McGavic for signature.   After

signing, McGavic returned the packages to the Garnishment Department, which checked the

packages for the attorney's signature and the debtor's correct address.   The Garnishment Department

also checked the garnishment accounts to ensure that no changes had occurred, such as bankruptcy

or death.   *Id.* at ¶¶ 6, 7. The debtor's copy of the garnishment package was date stamped and brought

to the mail room, where employees again checked the address for the debtor; the packages were then

sorted, put in envelopes and mailed.   *Id.* at ¶¶ 8, 9.

Ms. Wheeler states in her affidavit that during her 13 years working in the Garnishment

Department, the procedures for mailing the debtor's copy of the garnishment package have always

been the same and have been "strictly adhered to."   She states that to her knowledge, "there has

never been an issue with a debtor's notice not being sent out by our office."   *Id.* at ¶ 11.   On the basis

of this evidence, McGavic asserts that the mailbox rule presumption applies, and that Culp has failed to present evidence to rebut it. *Mahon*, 171 F.3d at 1202.  Here, applying  the mailbox rule, the proper and timely mailing of the debtor's copy of the garnishment package, as evidenced by McGavic's standard procedures,  raises a rebuttable presumption that it was received by the Culp.  The mailbox rule presumption can be rebutted only by clear and convincing evidence.  *In re Bucknum*, 951 F.2d 204, 206-07 (9th Cir. 1991)

Culp counters with the argument that because the information set out in Wheeler's affidavit was not provided to her in discovery, despite her requests, it can be inferred that the procedures set out in Wheeler's affidavit were not followed in this case.  McGavic offers the explanation that he offered to produce records responsive to Culp's First Request for Production and documents pertaining to McGavic's internal garnishment procedures under a protective order.  Second Aff. of Bruno J. Jagelski ¶ 2, Ex. 1, 6.  McGavic asserts that Culp failed to respond to these offers.  *Id.* at ¶ 3. Additionally, Culp complained that Wheeler was not produced for a deposition.  McGavic asserts that Culp noticed a deposition for the person most knowledgeable about mail room procedures, tentatively naming Rene Wheeler.  *Id.* at ¶ ¶ 2, 7; Ex. 2.  McGavic initially named Rene Wheeler as the person most knowledgeable about mail room procedures and the procedures for preparing and issuing garnishments, *id.* at Ex. 4, but after further investigation, designated Monica Bay as the person most knowledgeable about mail room procedures.  *Id.* at ¶ 5.  McGavic asserts that Culp never objected to the taking of Bay's deposition in place of Wheeler's.  *Id.* at ¶ 6.

In her response, Culp  offers deposition testimony from Bay, the mail room manager of McGavic's firm, that McGavic's garnishment system contained no procedure for checking to make sure that every garnishment printed was actually mailed.  Plaintiff's Response Ex. C p. 7.  Bay

testified at her deposition that she is a supervisor in the mailing room.  Deposition of Monica Bay, Plaintiff's Response Ex. C 4:14-18.  She stated that the garnishment department brought letters into the mail room separated into stacks and placed in separate trays, one for debtor letters and the other for certified mail.  *Id.* at 5:12-16.  When the letters were received in the mail room, some were hand folded and sealed, while others were placed into a bin for the bulk mail carrier, to be sealed and posted.  *Id.* at 5:17-21.  Bay was asked the following question:

> [B]asically what you're saying is that you get the mail in piles and it just goes, and there's no systems put in place for you to check for things being–that are wrong and to send it back the other way to the lawyers to tell them that something's up?

She answered, "Correct."  *Id.* at 7:14-20.

Culp argues that there was no procedure in the mail room for checking to make sure that every garnishment printed was actually mailed.  Bay's testimony establishes only that the mail room had no system in place to "check for things being . . . wrong" and to send back to the attorney.  The quoted  testimony is not about whether there has been a mistake in the mailing of the garnishment package and does not constitute clear and convincing evidence sufficient to overcome the presumption of mailing created by the mailbox rule.

At oral argument, the court allowed plaintiff to take Ms. Wheeler's deposition regarding the procedures outlined in her affidavit.  See Order dated June 8, 2011 (doc # 42).  The parties were allowed to submit supplemental briefing following this additional discovery.  Nothing in Wheeler's deposition testimony conflicts with or contradicts the procedures as set out in her affidavit.  Jagelski Aff. dated June 21, 2011, Ex. 1, Deposition of Rene Wheeler ("Wheeler Dep.").

I do not find Culp's arguments persuasive regarding the mailbox rule.  She had ample

Page 8 – OPINION AND ORDER

opportunity to question McGavic's staff regarding the procedures used in his office to mail out a garnishment package to a debtor.  Culp argues that because the procedures in this case are not the same as in *Mahon* , she has overcome the presumption that the mailing was proper.  However, she has not submitted clear and convincing evidence that McGavic's mailroom procedures were not followed nor that they were somehow defective in this case.

Culp argues that because McGavic has been investigated by the Oregon Department of Justice for alleged malfeasance, that his mail room procedures are automatically suspect and this provides the evidence to overcome the presumption.  She refers to the website of *Willamette Week* newspaper, reporting an investigation of McGavic by the Oregon Department of Justice and McGavic's subsequent disbarment and dissolution of his law offices.

Under Rule 201 of the Federal Rules of Evidence, the court has discretion to take judicial notice of an adjudicative fact, whether requested or not, and must take judicial notice if asked to do so by a party and supplied with "the necessary information."  Fed. R. Evid. 201(c), (d).  The adjudicative fact must be one not subject to reasonable dispute in that it is either 1) generally known within the territorial jurisdiction of the trial court or 2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.  *Id.* at (b).
See *Ritter v. Hughes Aircraft Co.*, 58 F.3d 454 (9th Cir. 1995) (not an abuse of discretion for the court to take judicial notice of widespread layoffs at Hughes Aircraft based on a newspaper article, because the layoffs were a fact which would generally be known in Southern California and which would be capable of sufficiently accurate and ready determination).

The article in *Willamette Week* contains selected quotations from a press release issued by

Oregon Attorney General John Kroger.  The court will exercise its discretion to take judicial notice

of the statements reported by the newspaper because the press release itself constitutes a source

whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b)(2).  The press release is

available at  http://www.doj.state.or.us/releases/2011/rel031711.shtml.

According to the article and the press release, the Oregon Department of Justice investigated

more than 90 complaints against McGavic's law firm while McGavic was simultaneously under

investigation by the Oregon State Bar.  *Id.*  The complaints accused McGavic and his partner of

ignoring debtor protections and rights afforded under the Oregon and Federal Debt Collection

Protection Acts, including misidentifying or purposefully confusing the identity of creditors in

documentation; omitting specific information related to the amount of the defaulted debt; failing to

provide proper verification of debts when requested; and calling debtors who had requested in

writing that they not be called. *Id.*

Neither the newspaper article nor the Department of Justice press release is probative with

respect to whether McGavic's office procedures, as described in the Wheeler Affidavit and

deposition, were or were not followed in this case.   The office procedures involved here were not

mentioned as a part of the Department of Justice investigation.  I agree with McGavic that this

evidence is not relevant to the issues on summary judgment and should be  excluded under Fed. R.

Evid. 404 as character evidence.

      B.     <u>Amounts in January 27, 2010 Letter</u>

The January 27 letter states:

The amount of the Claim, **as of the date of this letter**, is the following:

     a.     Principal                      $ 865.31

| | | |
|---|---|---|
| b. | Interest at 29.20% from March 25, 2009 to January 27, 2010 (Interest to be recalculated) | $ 356.97 |
| c. | Court Costs | $ 288.00 |
| d. | Prevailing Party fee | $ 275.00 |
| e. | Attorney fees | $ 500.00 |
| f. | Less payments received | $   0.00 |
| **TOTAL** | | $2,285.28 |

Amended Compl. Ex. 3; Jagelski Aff. Ex. 2.

Culp asserts that the zero amount shown in the "less payments received" column is a material misrepresentation because it does not reflect the amount garnished from her bank account.

McGavic counters with an affidavit from Dorothy Mulvaney, McGavic's accounting manager. Mulvaney states in her affidavit that when checks are received, the computer system "updates the balance of the account to the appropriate account." Mulvaney Aff. ¶ 5. Checks received as a result of garnishment are applied as follows: the account first credits payments to principal, then to attorney fees, then to court costs, and finally to interest. *Id.* at ¶ 6. Mulvaney states that she has "reviewed the January 27, 2010 payment arrangement letter sent from our office to Dusty Culp and the principal amount and the total amount in that letter accurately reflects the outstanding principal amount and the total amount owed at that time." *Id.* at ¶ 8.

McGavic also proffers Culp's deposition testimony, in which she acknowledged that when she received the January 27 letter, she noticed that the principal amount shown in the letter was less than the "original debt amount" shown on documents she had received from the bank. Jagelski Aff. Ex. 4 (Culp dep.) 68:3-21. She said she was curious about the discrepancy, but it did not occur to

her that the principal amount shown on the January 27 letter was lower because of the garnishment. *Id.* at 68:22-69:13.  Culp also acknowledged that at the time she received the January 27 letter, she was aware that the garnishment had occurred, and that other than the amounts garnished, she had made no payments on the debt.  *Id.* at 69:2-24.

A debt collector may not falsely represent the "character, amount, or legal status of any debt." 15 U.S.C.A. § 692e.  Any misrepresentation must be material in that it would likely mislead "the least sophisticated debtor."  *Donohue v. Quick Collect, Inc.* 592 F.3d 1027,1030 (9ᵗʰ Cir. 2010) (statement that $32.89 was interest, when it was both interest and finance charge, was immaterial). Here, the total owed was conceded to be accurate.

On the basis of this evidence, I conclude that there is no genuine issue of material fact as to whether McGavic falsely represented the character, amount or legal status of her debt, or that she was misled or deceived by the January 27 letter.   No rational trier of fact could conclude that defendant's technically false representation that no "payments" were made was a violation of FDCPA.  *Id.* at 1034.

C.    Affirmative Defenses

Because the court has concluded McGavic is entitled to judgment as a matter of law against Culp's claims under Or. Rev. Stat. § 18.658 and 15 U.S.C. § 1692e, it need not reach McGavic's request for summary judgment on his affirmative defenses to those claims.

**CONCLUSION**

McGavic's Motion for Partial Summary Judgment (doc. # 25) is GRANTED as to Motion One and Motion Two: and Motion Three and Motion Four are DENIED as moot.  The parties' respective motions to strike (doc. # 48 and #53) are DENIED.  Culp's Complaint (doc. #1) is DISMISSED and all pending motions are DENIED as moot.

IT IS SO ORDERED.

Dated this 14th  day of October 2011.


 /s/ Patricia Sullivan                                    
Patricia Sullivan
United States Magistrate Judge